# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

2014-1028 (lead), 1029 (member)

**QCUE, INC.,**

*Plaintiff-Appellee,*

**v.**

**DIGONEX TECHNOLOGIES, INC.,**

*Defendant-Appellant.*

---

**DIGONEX TECHNOLOGIES, INC.,**

*Plaintiff-Appellant,*

**v.**

**QCUE, INC.,**

*Defendant-Appellee.*

Appeal from the United States District Court for the Western District of Texas
in Case Nos. 1:12-cv-00484-SS, 1:12-cv-00801-SS, Judge Sam Sparks

**APPELLANT'S REPLY BRIEF**

Michael J. Sacksteder
David D. Schumann
Jeffrey A. Ware
FENWICK & WEST LLP
555 California St., 12th Floor
San Francisco, CA 94104
Tel: (415) 875-2300
Fax: (415) 281-1350
msacksteder@fenwick.com
dschumann@fenwick.com
jware@fenwick.com

*Attorneys for Appellant*
*Digonex Technologies, Inc.*

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Digonex Technologies, Inc. certifies the following pursuant to

Federal Circuit Rule 47.4:

1.     The full name of every party or *amicus curiae* represented by me is:

> Digonex Technologies, Inc.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

> N/A

3.     All party corporations or any publicly held companies that own 10 percent or more of the stock of the party or *amicus curiae* represented by me are:

> None

4.     The names of all the law firms and the partners or associates that appeared for the party or *amicus curiae* now represented by me in the trial court or agency or are expected to appear in this court are:

> FENWICK & WEST LLP:  Michael J. Sacksteder, David D. Schumann, and Jeffrey A. Ware

> ICE MILLER LLP: Holiday Banta (Indianapolis, IN)

> GRAVES DOUGHERTY: Matthew Powers and Steven Smit (Austin, TX)

Dated:  April 28, 2014

Respectfully submitted,

FENWICK & WEST LLP

*/s/ David D. Schumann*
David D. Schumann

*Counsel for Appellant*
*Digonex Technologies, Inc.*

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ......................................................................1

II. THE DISTRICT COURT ERRED IN FINDING THE CLAIMS OF THE DIGONEX PATENTS INDEFINITE ...........................................1

  A. "At or Near" in the '303 Patent is Definite.................................1

    1. The Claims and Specification Provide Substantial Guidance as to the Meaning and Boundaries of "At or Near".....................................................................1

    2. Extrinsic Evidence Shows a Person of Ordinary Skill in the Art Understands the Scope of "At or Near"..........4

    3. Qcue's Proposed Construction Supports Finding "At or Near" Definite ............................................................8

    4. Qcue Incorrectly Implies that "At or Near" Alone Distinguished the '303 Patent from the Prior Art.............9

  B. The Terms "a processor"/"the processor" are not Indefinite and Both Parties Proposed the same construction ....................10

    1. QCue's Proposed Construction Demonstrates that the Term "A Processor" Is Not Insoluably Ambigous.........11

    2. The Intrinsic Evidence Supports Both Parties' Proposed Construction....................................................15

III. CONCLUSION.......................................................................17

CERTIFICATE OF SERVICE. ..............................................................17

CERTIFICATE OF COMPLIANCE WITH RULE 32(A). ...................................20

i

# <u>TABLE OF AUTHORITIES</u>

## CASES

*01 Communique Lab., Inc. v. LogMeIn, Inc.*,
   687 F.3d 1292 (Fed. Cir. 2012) ..........................................................................17

*Baldwin Graphic Systems, Inc. v. Siebert, Inc.*,
   512 F. 3d 1338 (Fed. Cir. 2008) .........................................................................17

*DSW, Inc. v. Shoe Pavilion, Inc.*,
   537 F.3d 1342 (Fed. Cir. 2008) ..........................................................................16

*Elkay Mfg. Co. v. Ebco Mfg. Co.*,
   192 F.3d 973 (Fed. Cir. 1999) ............................................................................13

*Halliburton v M-I LLC*,
   514 F. 3d 1244 (Fed. Cir. 2008) ...........................................................................8

*Housey Pharmaceuticals v. Astrazeneca UK Ltd.*
   366 Fed. 3d 1348 (Fed Cir. 2004)......................................................................15

*Nat'l Oilwell Varco, L.P. v. Auto-Dril, Inc.*,
   No. 5:09cv85, 2011 U.S. Dist. LEXIS 91124 (E.D. Tex. Aug. 16,
   2011) ....................................................................................................................17

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ..........................................................................15

## RULES

Federal Rule of Appellate Procedure 32....................................................................20

## I.   INTRODUCTION

Qcue's response to Digonex's opening brief is to claim that Digonex has not demonstrated that its claims are valid.  But the patents-in-suit are presumed valid, and the burden to show that the claims are indefinite lies on Qcue, not Digonex.  Far from being "insolubly ambiguous," the claims of the patents-in-suit are readily amenable to construction as shown by the intrinsic evidence and the evidence in the record regarding how one of ordinary skill in the art would read the claims.  The district court erred in holding the claims of the '303 and '424 patents indefinite, and this Court should reverse.

## II.   THE DISTRICT COURT ERRED IN FINDING THE CLAIMS OF THE DIGONEX PATENTS INDEFINITE

### A.   "At or Near" in the '303 Patent is Definite

#### 1.   The Claims and Specification Provide Substantial Guidance as to the Meaning and Boundaries of "At or Near"

The purpose of the limitation "at or near" is clear.  The goal of the price adjustments described in the '303 Patent is to sell the last of the items at the expiration time.  A182 ['303 Patent] at 35:59-63.  And Qcue's responsive brief acknowledges that the '303 Patent describes an easily-understood concept, that, "items containing a 'sell by' date should be priced such that the total quantity demanded prior to the 'sell by' date equals the limited supply," or "a rational seller's behavior based on supply and demand."  Qcue suggests that the '303

Patent is simple and overbroad, then balks when confronted with the ordinary phrase "at or near," insisting that no skilled artisan could understand it. Qcue ignores language from the claims and the specification in arguing that Federal Circuit precedent supports a finding of indefiniteness. The intrinsic evidence provides substantial guidance in defining the boundaries of "at or near." The language of the claims and the parties' agreed upon construction limit the scope of "at or near" by requiring the processor be configured to "sell out . . . at or near the expiration time," i.e. the time the parties agreed is when a seller would like to liquidate their inventory of an item available in a limited quantity. A183 - A184 ['303 Patent] Claims 1, 5, 8; A2614 [Joint Claim Construction Chart] at 2.

Other terms in the claims aid a skilled artisan in determining the scope of the claims, such as "initial quantity," "current remaining quantity," "expiration time," and "prior sales history." A183 - A184 ['303 Patent] Claims 1, 5, 8. Using these additional terms as guidance, one would generally expect the time is "at or near the expiration time" when (1) the elapsed time is great relative to the initial time and expiration time; and (2) given the prior sales history, the remaining quantity is minimal relative to the initial quantity.

The specification shows that a person of ordinary skill in the art would not be interpreting the bounds of "at or near" in a vacuum. Instead, there are repeated references regarding the types of information stored in the pricing server's

memory, and thus, factors by which a person of ordinary skill in the art would

consider when determining the boundaries of "at or near."

> The database present in memory **112** includes *various types of data* to facilitate dynamically pricing the item available in a limited quantity in a manner that will likely result in the *inventory of the item* becoming exhausted *at or near the expiration time*. Among the data stored in memory **112** will be data indicative of the *initial quantity of an item available in a limited quantity*. Another type of data stored in memory **112** is data indicative of the *current remaining quantity of the item* available in a limited quantity. Yet another type of data stored in memory **112** is data indicative of an *expiration time* at which it is desired that all of the item available in a limited quantity be sold. Other data may include *time stamped data* indicative of the *time of each sale of the item* available in a limited quantity. This time stamped sales data may be linked or otherwise associated with other data regarding the sale, such as the *price at which the sale was consummated*, the *buyer's name*, *demographic information* regarding the buyer or any other data already described as being present in the database. In one embodiment, the data stored in memory **112** includes data indicative of the *price* at which the item available at a limited quantity was sold for each sale of the item with such data being associated with the appropriate time stamped data indicative of the time at which the item was sold at such price. From the time stamped date, *sales history data* for each item available in a limited quantity may be stored in the database or may be generated from data stored in memory **112** by the processor **110**.

A182 ['303 Patent] at 35:32-58 (emphasis added); *see also* A183 ['303 Patent] at

37:41-46("In one embodiment, the algorithm implemented by the process receives

seven inputs, the total supply of the product remaining, the total time left, the

current price, the time at the current price, the minimum price, the significance

level delta and alpha parameters"). And the specification gives guidance regarding

what is "near" the expiration time. *See, e.g.*, A182 ['303 Patent] at 35:25-31

(expiration time "may be a time mandated by the type of item sold"), *id.* at 36:44-46 (in one embodiment, "the pricing server is configured to attempt to dynamically price the product to sell the last product at the last minute on the last day.").

### 2. Extrinsic Evidence Shows a Person of Ordinary Skill in the Art Understands the Scope of "At or Near"

Neither party disputes whether the phrase "at or near" must be understood based on the context of the items being sold; instead, the disagreement arises from whether given the appropriate factual context, a person of ordinary skill in the art could discern what "near" means. Qcue's selective quotation aside, Dr. Shamos, the only person of skill in the art in the record, not only repeatedly emphasized on the record that one of ordinary skill in the art reading the '303 Patent would understand the meaning and scope of 'at or near,' but also explained *how* one would do so. *See* A4112-A4113 [Declaration of Michael Ian Shamos In Support of Digonex Technologies, Inc.'s Opening *Markman* Brief (Dkt. 44-10)("Shamos Decl.")] at ¶¶ 28-29, A4116-A4119 at ¶¶ 36-39; A4246-A4247 [Apr. 18, 2013 Deposition Transcript of Michael I. Shamos, Ph.D., J.D. ("Shamos Dep. Tr.)] at 83:6-84:17, A4297-4298 at 134:23-135:13, A4345-A4346 at 182:9-183:8; A2124-A2130 [May 14, 2013 Transcript of Markman Hearing Before Special Master Karl O. Bayer ("Markman Hearing Tr.")] at 46:9-52:22, A2183-A2185 at 105:23-107:6. During the Markman Hearing, Dr. Shamos listed several factors which one of

ordinary skill in the art would consider when determining the scope of "at or near."

These factors include the nature of the market, how quickly orders are placed, and

the sales timeframe. A2127 – A2128 [Markman Hearing Tr.] at 50:5-51:14;

A4246 [Shamos Dep. Tr.] at 83:6-84:17; A4112-A4113 [Shamos Decl.] at ¶¶ 28-

29; *see also* Appellee Br. at 21 and A184 ['303 Patent] Claim 1, 5, 8. And in his

deposition, Dr. Shamos clearly linked the bounds of the phrase "at or near" to the

sales rate.

> Q. So, your testimony is one cannot put a number on
> what "at or near" is?
> . . . .
>
> A. That applies in every case. No. If one could, maybe
> one would have, but one didn't because "at or near"
> captures it.
>
> Q. You don't think one could put a percentage of the
> overall sales time as a number?
>
> A. No. I explained why. Because if I have a segment
> that's a year long, and these are very expensive items, and
> typically they sell at the rate of one per month, then "at or
>
> 20 near" isn't going to mean within two weeks of the end.
> I'm probably not going to sell one within two weeks of
> the end. On the other hand, if the segment is a year long
> and these things sell at the rate of one a minute, then "at
> or near the end" is going to be much closer than two
> weeks. It depends on the rate at which sales are
> occurring."

A4261 – A4262 [Shamos Dep. Tr.] at 98:7-99:3.

Qcue's responsive argument focuses on alleged inconsistencies revealed by

Dr. Shamos' statements in a deposition wherein counsel for Qcue presented ambiguous hypotheticals and Dr. Shamos insisted his answer was contextual. Without further information, such as the type of good sold (e.g. movie tickets, concert tickets, or artist memorabilia, such as t-shirts), even a person of ordinary skill in the art cannot properly answer these questions. *See* A182 ['303 Patent] at 35:25-31 (expiration time "may be at a time mandated by the type of item sold").

Qcue goes on for pages arguing that Dr. Shamos could not testify as to whether "at or near" would or would not include times after the expiration time. To the contrary, his testimony was clear: "at or near" is open-ended, but Dr. Shamos could not remember during the deposition whether *other claim elements*, in particular "expiration time," a phrase about which Dr. Shamos did not testify and which was not in dispute, limited the overall phrase to the expiration time.[1]

> Q. I'm just confused by that. I'm sorry. Could you clarify that for me? …
>
> A. If "expiration time" means no sales can occur after the expiration time, that puts a one-ended boundary on "at or near." If sales can extend past the expiration time, that expiration time is not a hard boundary. I have to go back to the patent to see whether or not you can actually have sales after the expiration.

A4270 [Shamos Dep. Tr.] at 107:10-20.

---

[1] The parties actually had agreed on a construction for "expiration time," and Dr. Shamos did not offer testimony on the phrase. A2614 (Joint Claim Construction Chart) at 2.

> Q. Earlier you stated that "at or near" can't extend past the expiration time. I'm confused by your explanation that it can't.

> A. What I said, I thought it wouldn't. The plain and ordinary meaning of "at or near" would allow it to extend past the expiration time, unless there's disclosure in the spec that says sales must absolutely stop at the expiration time, in which case, we can't sell past the expiration time.

A4271 [Shamos Dep. Tr.] at 108:6-15.  Contrary to QCue's suggestion, Dr. Shamos did not suggest that the specification would define expiration time as limiting "at or near" to open-ended in one or both directions.  As is apparent from his testimony, Dr. Shamos could not remember whether or not the specification put an *additional* restriction on the claims.  As Digonex noted in its opening brief, it does not.  Appellant Br. at 25.  Because Dr. Shamos did not testify that "at or near" was limited to before the expiration time, he accordingly did not "revert" to a different position on that issue.

The bounds of "near" are readily understood even by laymen – it is need because of the uncertainty inherent in human behavior.  Just as Dr. Shamos noted, any person can understand what a person means when they say they will stop by "around 7:00," or visit "around November," and will understand that the time limits involved in "around" will necessarily vary based on the context.  A2130 [Markman Hearing Tr.] at 52:14-22.  The same is true here.  As Dr. Shamos noted during the Markman Hearing, "[t]he algorithm is always working to try to sell out

at the expiration time. We understand that cannot be achieved in general." A2134

[Markman Hearing Tr.] at 56:12-13. Dr. Shamos' testimony shows that Qcue does

not have the clear and convincing evidence it needs to support a finding of

indefiniteness.

### 3. Qcue's Proposed Construction Supports Finding "At or Near" Definite

Further, the fact that Qcue advanced its own proposed construction,

ostensibly supported by the evidence, casts doubt on whether the phrase "at or

near" is "not amenable to construction." Unlike in *Halliburton v. M-I LLC*, where

the party proposing the construction was not arguing the term was indefinite, here,

Qcue both proposed a construction and argued that phrase is indefinite. 514 F.3d

1244, 1250 (Fed. Cir. 2008). Qcue is trying to have it both ways: (1) the term "at

or near" is insolubly ambiguous and not amenable to construction; and (2) its

proposed construction is well-supported by the claims and the specification. A40

[Special Master's Recommendations for Claim Construction – Disputed Terms

U.S. Patent No. 8,112,303] (Qcue identifying as support for its proposed

construction of "at or near," A182 ['303 patent] at 35:32-58; 36:35-36; A183 –

A184 at 38:59-40:55). Although the mere recitation of the words of a construction

may not be dispositive, it is suggestive that the term is not as ambiguous as Qcue

would like this Court to think.

### 4. Qcue Incorrectly Implies that "At or Near" Alone Distinguished the '303 Patent from the Prior Art

Qcue argues that "amendment of the term 'at or near' to the claims was necessary to overcome the prior art and achieve allowance." Appellee Br. at 19. This characterization of the prosecution history grossly misrepresents the significance of the change. The edits to the claims changing "by" to "at or near" were part of a much larger examiner's amendment to the claims which also added two large "wherein" clauses to distinguish the claims from the prior art. The edit in its entirety is as follows:

> wherein the processor is configured to control a rate of sale in order to sell out the items available in a limited quantity [[by]] at or near the expiration time and to price the items available in a limited quantity so as to deplete an inventory of the items available in a limited quantity [[by]] at or near the expiration time based in part by accessing the memory to retrieve the data indicative of the initial quantity, the current remaining quantity and the expiration time and accessing the clock;

> wherein the processor is configured to increase the price of the items available in a limited quantity when the data stored in the memory indicates that inventory of the items available in a limited quantity based on prior sales history is likely to be exhausted prior to the expiration time; and

> wherein the processor is configured to decrease the price of the items when the data stored in the memory indicates that at least some of remaining inventory of the items available in a limited quantity based on prior sales history is likely to exist at the expiration time.

A1740 [Ex. G (Dkt. 45-7) Notice of Allowability] at DGX00000202. Qcue's suggestion that "at or near" is the prime mover in the allowance of the claims is

clearly incorrect when put in the context of the Examiner's overall amendment.

Not only should the items sell out "at or near" the expiration time, but it is clear

that the "prior sales history" is closely coupled to this concept and is used as a

basis for adjusting prices to fall as close to the expiration time as possible. Qcue's

suggestion to the contrary, "at or near" is tied by the intrinsic and extrinsic

evidence, in the context of the particular pricing application at issue, to the sales

history and rates of sale of the particular items. It is not a "boundless" period, but

one congruent with these parameters and readily understandable by one of ordinary

skill in the art. For these reasons, the district court erred in holding "at or near"

indefinite.

### B.     The Terms "a processor"/"the processor" are not Indefinite and Both Parties Proposed the same construction

Ample evidence establishes that the use of the terms "a processor" and "the

processor" in the '424 Patent is not ambiguous. Dr. Shamos provided a detailed

description of how one of ordinary skill in the art would be able to identify

unambiguously "a processor" and "the processor" in the claims of the '424 Patent.

A1292 – A1293 (Digonex Technologies, Inc.'s Opening *Markman* Brief (Dkt. No.

44)] at 22-23; A2544 – A2545 (Digonex Technologies, Inc.'s Post-*Markman*

Hearing Opening Claim Construction Brief (Dkt. No. 55)("Digonex's Post-

*Markman* Opening CC")] at 10-11. In fact, Qcue concedes that there is "a unique

map[ping]" of the terms that is "readily understandable by the fact-finder or the public."  A2578 [Qcue Inc.'s Post-*Markman* Brief (Dkt. No. 56)] at 20.

In contrast to its clear statement regarding these terms being "readily understandable," QCue claims that that the terms "a processor" and "the processor" are indefinite because the claims themselves recite more than one "a processor."  Yet at the same time, QCue proposes the very same construction and mapping as Digonex.  This is not a situation where QCue can have it both ways; either these claim terms are not amenable to construction, or they are, as both parties in this case have acknowledged.  As explained below, and in both QCue and Digonex's claim construction briefing, the terms "a processor" and "the processor" have unambiguous constructions when the claim language surrounding those terms are considered, and therefore are not indefinite.

### 1.    QCue's Proposed Construction Demonstrates that the Term "A Processor" Is Not Insoluably Ambiguous

That QCue was able to provide a construction and support it with intrinsic evidence belies its position that these terms are insolubly ambiguous.  During claim construction, QCue proposed that the terms "a processor" and "the processor" be construed as "digital circuitry, analog circuitry, or both of a programmable variety responsive to software instructions, a hardwired state machine or a combination of these"  A1555 – A1558 [Qcue Inc.'s Opening

*Markman* Brief (Dkt. 45) ("Qcue's Opening *Markman*")] at 21-25.  QCue

supported its proposed construction for these terms by citing to the specification:

> The intrinsic evidence of the '424 patent provides various meanings of the term processor:
>
> Further, processor 110 can be embodied in a form having more than one processing unit, such as a multi-processor configuration and should be understood to collectively refer to such configurations as well as a single-processor-based arrangement.  One or more components of the processor 110 may be of electronic variety defining digital circuitry, analog circuitry, or both.  Processor 110 can be of a programmable variety responsive to software instructions, a hardwired state machine, or a combination of these.  *Id.*, C4:35-43.

A1557 – A1558 [Que's Opening *Markman*] at 23-4.

Moreover, QCue states in its brief that the specification supports

configurations of "a processor" and "the processor" that contain either a single

processor, or multiple processors.

> [t]he specification describes a "dynamic pricing system 102" that has a "processor 110." '424 patent C4:24-26. The "processor 110" is used to control the operation of the dynamic pricing system and "can be embodied in a form **having more than one processing unit, such as a multiprocessor configuration,** and should be understood to collectively refer to such configurations as well as a single-processor-based arrangement." *Id.* (emphasis added).  Moreover, the specification also refers to embodiments in which "[t]he dynamic  pricing system 102 can be located on a single server or distributed over several servers," with each server having its own processor. Id., C4:26-28. Thus, the specification refers to

> embodiments having a single processor or multiple
> processors or a single server or multiple servers. More
> importantly, however, the steps performed in the
> invention are repeatedly described as being performed by
> the "processor 110" that includes both a single processor
> and multiple processors.

A1556 – A1557 [Que's Opening *Markman*] at 22-23 (emphasis and quotations

original); Appellee Br. at 35. QCue's position is consistent with canon of

construction that the use of "a" means "one or more." *E.g. Elkay Mfg. Co. v. Ebco

Mfg. Co.*, 192 F.3d 973, 977 (Fed. Cir. 1999). As shown above, in contrast to its

position that these terms are insolubly ambiguous, QCue proposed a definition

which is supported with intrinsic evidence.

In fact, QCue specifically stated in its briefing that the terms "a processor"

and "the processor" do not lack antecedent basis, but rather, that it could not

determine which "a processor" was being referred to by a subsequent "the

processor." A1555 [Que's Opening *Markman* Br.] at 21. However, when the

Special Master tasked the parties with providing a mapping to explain that

correspondence, QCue provided the same mapping as Digonex:

## Qcue's Mapping

1. A method, comprising

[a] identifying a plurality of media items belonging to a category;

[b] grouping using a [first] processor [A1] a first plurality of the media items identified as belonging to the category into a first group based on a sales criteria associated with each of the media items;

[c] pricing each media item in the first group according to a first pricing strategy using a [second] processor [A2];

[d] sending a first price determined by the processor [T1] using the first pricing strategy of a first item of the plurality of items in the first group for sale from a [third] processor [A3] to one or more clients over a network;

[e] grouping using a [fourth] processor [A4] a second plurality of the media items identified as belonging to the category into a second group based on a sales criteria associated with each of the plurality of media items;

[f] pricing each media item in the second group according to a second pricing strategy;

[g] sending a second price determined by the processor [T2] using the second pricing strategy of a second item of the plurality of items in the second group for sale from a [fifth] processor [A5] to one or more clients over a network;

[h] wherein the value of the sales criteria associated with each of the media items in the first group is superior to the value of the sales criteria associated with each of the media items in the second group and wherein

[i] receiving one or more orders for the second of the plurality of items in the second group at the second price from one or more of the clients;

[j] updating the sales criteria for the second of the plurality of items in the second group using the processor [T3]; and

[k] regrouping the plurality of items into the first and second groups based on the updated sales criteria.

## Digonex's Mapping

1. A method, comprising:

identifying a plurality of media items belonging to a category;

grouping using a processor a first plurality of the media items identified as belonging to the category into a first group based on a sales criteria associated with each of the plurality of media items;

pricing each media item in the first group according to a first pricing strategy using a processor;

sending a first price determined by the processor using the first pricing strategy of a first item of the plurality of items in the first group for sale from a processor to one or more clients over a network;

grouping using a processor a second plurality of the media items identified as belonging to the category into a second group based on a sales criteria associated with each of the plurality of media items; pricing each media item in the second group according to a second pricing strategy;

sending a second price determined by the processor using the second pricing strategy of a second item of the plurality of items in the second group for sale from a processor to one or more clients over a network;

wherein the value of the sales criteria associated with each of the media items in the first group is superior to the value of the sales criteria associated with each of the media items in the second group and wherein the first pricing strategy generates a higher price for media items in the first group than the price generates for each media item in the second group by the second pricing strategy; receiving one or more orders for the second of the plurality of items in the second group at the second price from one or more of the clients; updating the sales criteria for the second of the plurality of items in the second group using the processor; and regrouping the plurality of items into the first and second groups based on the updated sales criteria.

A2582 [Appendix A to Qcue Inc.'s Post-*Markman* Brief (Dkt, No. 56-1)]; A2546 [Digonex's Post-*Markman* Opening Br.] at 12. Notably, this identical mapping is consistent with Digonex's arguments and Dr. Shamos's testimony. A2544 – A2545 [Digonex's Post-*Markman* Opening Br.] at 10-11.[2] In fact, QCue argues that this mapping renders the claims definite. *See* A2577 – A2578 [Que Inc.'s

---

[2] Despite the fact that Qcue proposed the exact same mapping proposed by Digonex and Dr. Shamos, Qcue again resorts to criticizing Dr. Shamos's testimony as allegedly inconsistent. However, any alleged inconsistency in Dr. Shamos's testimony was the result of a typographical error. *See* A2610 [Digonex Technologies, Inc.'s Post-*Markman* Hearing Responsive Claim Construction Brief (Dkt. No. 60)] at 5; A2672 [Digonex Technologies, Inc.'s Opposition to Qcue's Motion for Summary Judgment for Indefiniteness (Dkt. No. 64)] at 8.

Post-*Markman* Br.] at 19-20.  Thus, Qcue failed to meet its heavy burden to show that claims are insolubly ambiguous and are therefore definite.

### 2.    The Intrinsic Evidence Supports Both Parties' Proposed Construction

As explained in Digonex's Appeal Brief, the claims of the '424 Patent are not indefinite when one of skill in the art considers the words of the claim surrounding "a processor" and "the processor."  Appellant Br. at 27-29.  Once placed in context of the claims, the above mapping is clear.  *Id.*  Despite QCue's insistence that "[t]he intrinsic evidence does not provide any guidance as to the proper mapping," the claims themselves provide an unambiguous mapping (as both parties have shown) and are indeed intrinsic evidence.  *Housey Pharmaceuticals v. Astrazeneca UK Ltd.*, 366 F. 3d 1348, 1352 (Fed. Cir. 2004) (claims are part of the intrinsic record).  In fact, the claims are considered "of primary importance" for claim construction.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).

As explained in Digonex's opening brief and Dr. Shamos's declaration, the words of the claim make clear which "the processor" refers to which "a processor." Appellant Br. at 27-29; A4116-A4119 [Shamos Decl.] at ¶¶ 36-39.  For example, in claim 1 of the phrase "sending a first price determined by the processor", "the processor" clearly refers to one that determines prices (A125 ['424 Patent] at 38:47);  the only "a processor" before this in the claim that determines prices is the

phrase directly prior to that one, "pricing each media item in the first group . . . using a processor . . . ." *Id.* at 38:45-6. *See* A2184 – A2184 [Markman Hearing Tr.] at 106:1  107:5. As Dr. Shamos testified, a logical mapping connects each use of the disputed "processor" terms to its antecedent basis. *Id.*; A1483 – A1486 [Shamos Decl.] at ¶ 36-39. Thus, reading the various instances of "a processor" and "the processor" in the context of the claim reciting these terms, it is clear which "the processor" instance relates to which "a processor" instance. A4541 – A4542 [Shamos Depo. Tr.] at 106:23-107:6. As a result, there is nothing ambiguous about this claim or these terms.

QCue's additional argument that these terms are indefinite because a potential infringer would not know the exact number and configuration of processors implicated by the claim misses the point. *See* Appellee Br. at 39-41. As an initial matter, the claims at issue in the '424 Patent are method claims, not apparatus claims. Method claims are not infringed by the presence of a specific configuration of structures, but rather are infringed when the steps of the claim are performed. *DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F.3d 1342, 1348 (Fed. Cir. 2008) (claims directed to a method for using an apparatus, not to its structure or assembly). The claims of the '424 Patent require performing a series of steps, *i.e.* "identifying," "grouping," "pricing," "sending" and so on. These steps are performed by one or more processors as recited by the claim; however, the specific

configuration, *e.g.* whether one or more of the "a processor"[3] terms refer to one

processor, or whether there refer to more than one processors is irrelevant to

whether a process infringes these claims. Therefore, QCue's argument that these

method claims are indefinite because they do not specify exactly how many

processors are used is an improper attempt to import structural limitations into a

method claim. *Nat'l Oilwell Varco, L.P. v. Auto-Dril, Inc.*, No. 5:09cv85, 2011

U.S. Dist. LEXIS 91124 (E.D. Tex. Aug. 16, 2011). As discussed above, there is

nothing ambiguous about these claims, and therefore, the district court erred in

finding them indefinite.

## III. CONCLUSION

Because Qcue failed to meet its burden to show the claims of the patents-in-

suit are invalid, and because the record below demonstrates that the disputed terms

are amenable to construction, this Court should reverse the decision of the court

---

[3] Notably, the use of the article "a" is interpreted to mean "one or more." *Baldwin Graphic Systems, Inc. v. Siebert, Inc.*, 512 F. 3d 1338, 1342 (Fed. Cir. 2008) ("That 'a' or 'an' can mean 'one or more' is best described as a rule, rather than merely as a presumption or even a convention."); *01 Communique Lab., Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1297 (Fed. Cir. 2012). ("As a general rule, the words 'a' or 'an' in a patent claim carry the meaning of 'one or more' . . . . The subsequent use of definite articles 'the' or 'said' in a claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning.")(internal citations omitted). Under QCue's theory, any use of "a processor" would necessarily be indefinite because a potential infringer would not know how many processors that referred to. Under long-held precedent, this argument fails.

below.


Dated:  April 28, 2014                    Respectfully submitted,

                                          FENWICK & WEST LLP


                                          */s/ David D. Schumann*
                                             David D. Schumann

                                             Michael J. Sacksteder
                                             David D. Schumann
                                             Jeffrey A. Ware
                                             FENWICK & WEST LLP
                                             555 California St., 12th Floor
                                             San Francisco, CA 94104
                                             Tel: (415) 875-2300
                                             Fax: (415) 281-1350
                                             msacksteder@fenwick.com
                                             dschumann@fenwick.com
                                             jware@fenwick.com

                                             *Attorneys for Appellant*
                                             *Digonex Technologies, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 28, 2014, I electronically filed the foregoing

documents:

### APPELLANT'S REPLY BRIEF

with the Clerk for the Court using the CM/ECF system, which will then send a

notification of such filing (NEF) to the following:

**Counsel for Appellee Qcue, Inc.**

Edward A. Cavazos
Ben Bernell
111 Congress Ave, Suite 2300
Austin, Texas 78701
Telephone: (512) 494-3633
Facsimile (800) 404-3970
Ed.cavazos@bgllp.com
Ben.Bernell@bgllp.com

*/s/ David D. Schumann*
David D. Schumann

*Counsel for Appellant*
*Digonex Technologies, Inc.*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(A)</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). The reply contains 4567 words, excluding the parts of the reply exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

Dated: April 28, 2014      */s/ David D. Schumann* _____
David D. Schumann

*Counsel for Appellant*
*Digonex Technologies, Inc.*